Justice KENNEDY, dissenting.
It seems to me proper, in joining Justice SCALIA's dissent, to add these additional remarks. The dissent is altogether correct to point out that petitioner here cannot point to a class of her co-workers that was accommodated and that would include her but for the particular limitations imposed by her pregnancy. Many other workers with health-related restrictions were not accommodated either. And, in addition, there is no showing here of animus or hostility to pregnant women.
*1367 But as a matter of societal concern, indifference is quite another matter. There must be little doubt that women who are in the work force-by choice, by financial necessity, or both-confront a serious disadvantage after becoming pregnant. They may find it difficult to continue to work, at least in their regular assignment, while still taking necessary steps to avoid risks to their health and the health of their future children. This is why the difficulties pregnant women face in the workplace are and do remain an issue of national importance.
"Historically, denial or curtailment of women's employment opportunities has been traceable directly to the pervasive presumption that women are mothers first, and workers second."Nevada Dept. of Human Resources v. Hibbs,538 U.S. 721, 736, 123 S.Ct. 1972, 155 L.Ed.2d 953 (2003)(quoting The Parental and Medical Leave Act of 1986: Joint Hearing before the Subcommittee on Labor-Management Relations and the Subcommittee on Labor Standards of the House Committee on Education and Labor, 99th Cong., 2d Sess., 100 (1986)). Such "attitudes about pregnancy and childbirth ... have sustained pervasive, often law-sanctioned, restrictions on a woman's place among paid workers." AT & T Corp. v. Hulteen,556 U.S. 701, 724, 129 S.Ct. 1962, 173 L.Ed.2d 898 (2009)(GINSBURG, J., dissenting). Although much progress has been made in recent decades and many employers have voluntarily adopted policies designed to recruit, accommodate, and retain employees who are pregnant or have young children, see Brief for U.S. Women's Chamber of Commerce et al. as Amici Curiae10-14, pregnant employees continue to be disadvantaged-and often discriminated against-in the workplace, see Brief of Law Professors et al. as Amici Curiae 37-38.
Recognizing the financial and dignitary harm caused by these conditions, Congress and the States have enacted laws to combat or alleviate, at least to some extent, the difficulties faced by pregnant women in the work force. Most relevant here, Congress enacted the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e(k), which defines discrimination on the basis of pregnancy as sex discrimination for purposes of Title VII and clarifies that pregnant employees "shall be treated the same" as nonpregnant employees who are "similar in their ability or inability to work." The PDA forbids not only disparate treatment but also disparate impact, the latter of which prohibits "practices that are not intended to discriminate but in fact have a disproportionate adverse effect." Ricci v. DeStefano,557 U.S. 557, 577, 129 S.Ct. 2658, 174 L.Ed.2d 490 (2009). Congress further enacted the parental-leave provision of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2612(a)(1)(A), which requires certain employers to provide eligible employees with 12 workweeks of leave because of the birth of a child. And after the events giving rise to this litigation, Congress passed the ADA Amendments Act of 2008, 122 Stat. 3553, which expands protections for employees with temporary disabilities. As the parties note, Brief for Petitioner 37-43; Brief for Respondent 21-22; Brief for United States as Amicus Curiae 24-25, these amendments and their implementing regulations, 29 CFR § 1630 (2015), may require accommodations for many pregnant employees, even though pregnancy itself is not expressly classified as a disability. Additionally, many States have enacted laws providing certain accommodations for pregnant employees. See, e.g., Cal. Govt.Code Ann. § 12945 (West 2011); La.Rev.Stat. Ann. § 23:342(4)(West 2010); W. Va.Code Ann. § 5-11B-2(Lexis Supp. 2014); see also California Fed. Sav. &
*1368 Loan Assn. v. Guerra,479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987)(holding that the PDA does not pre-empt such statutes). These Acts honor and safeguard the important contributions women make to both the workplace and the American family.
Today the Court addresses only one of these legal protections: the PDA's prohibition of disparate treatment. For the reasons well stated in Justice SCALIA's dissenting opinion, the Court interprets the PDA in a manner that risks "conflation of disparate impact with disparate treatment" by permitting a plaintiff to use a policy's disproportionate burden on pregnant employees as evidence of pretext.Ante,at 1364 - 1365; see ante, at 1354 - 1355 (opinion of the Court). In so doing, the Court injects unnecessary confusion into the accepted burden-shifting framework established in McDonnell Douglas Corp. v. Green,411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).
With these remarks, I join Justice SCALIA's dissent.